UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| OLUKAYODE DAVID OJO,<br>                    Plaintiff(s), <br><br>          v. <br><br>CORECIVIC, INC. (a.k.a. Corrections Corporation of America ("CCA")); <br><br>ORLANDO RODRIGUEZ, Warden, Elizabeth Detention Center ("EDC"); <br><br>WISE, Assistant Warden EDC; <br><br>MURRAY, CoreCivic Lieutenant; <br><br>SANDRA TUTLER, CoreCivic Lieutenant; <br><br>CREAMER, CoreCivic Lieutenant; <br><br>O'NEILL, CoreCivic Lieutenant; <br><br>MOMEL RODRIGUEZ, CoreCivic Detention Officer; <br><br>BEASLEY, CoreCivic Detention Officer; <br><br>VERA, CoreCivic Detention Officer; <br><br>LADINA K. SMITH, CoreCivic Detention Officer; <br><br>ERIKA GONZALEZ, CoreCivic Detention Officer; <br><br>CIVIL, CoreCivic Detention Officer; <br><br>CORECIVIC DOE #1-10 (said names being fictitious to designate Defendants CoreCivic Detention Officers that their identities are currently available or unknown to Plaintiffs); <br><br>                    Defendant(s). | Civil Complaint<br><br>Case #: _____<br><br><br>Jury Trial Demanded |

1

OLUKAYODE DAVID OJO (hereinafter "Plaintiff") brought this action against the Defendants, individually and in official capacity, for damages and injunctive reliefs, and upon information and belief including but not limited to personal knowledge, allege as follows:

## NATURE OF THE ACTION

1  This is a civil action brought pursuant to 42 U.S.C. § 1983 and pendant State claims seeking compensatory and punitive damages and injunctive relief against Defendants Corecivic, Rodriguez, Wise, Murray, Tutler, Creamer, O'Neill, Momel, Beasley, Vera, Ladina, Gonzale, Civil, and Corecivic Doe #1-10, for their violations of Plaintiffs civil rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments to the Constitution of the United States and the Constitution of the State of New Jersey as well as for unlawful imprisonment, intentional infliction of emotional distress, false arrest and false imprisonment resulting from the unlawful acts of Defendants.

## JURISDICTION

2  This action is brought pursuant to 42 U.S.C. §§ 1981, 1983 and 1988; and the First, Fourth, Fifth, Eighth, Ninth, and Fourteenth Amendments to the Constitution of the United States.

3  This Court has subject matter jurisdiction of this action under 28 U.S.C. §§ 1331, 1343, and 28 U.S.C. § 1346(b)(1).

4  This Court is authorized to render declaratory relief pursuant to 28 U.S.C. § 2201 and § 2202, and Rule 57 of the Federal Rules of Civil Procedure.

5  This Court is authorized to render and provide injunctive relief pursuant to 28 U.S.C. § 2283.

6  This Court has jurisdiction over the Plaintiffs' state law claims under the doctrine of pendent jurisdiction.

7  Venue is proper in the District of New Jersey pursuant to 28 U.S.C. § 1391(b)(2) and (e) because, among other things, the defendants reside, and substantial actions, omissions and events complained of herein occurred, in the County of Union, State of New Jersey, and within this District of New Jersey.

## PARTIES

8  Plaintiff OLUKAYODE DAVID OJO (hereinafter "Mr. Ojo") is a resident of Essex County, New Jersey. At all times relevant to the issues raised in this complaint, Mr. Ojo was an

2

immigrantion detainee, under the custody of the Department of Homeland Security ("DHS") - Immigration and Customs Enforce ("ICE"), who was arrested and detained in Elizabeth Detention Center ("EDC") on April 12, 2018. Mr. Ojo remained detained in the EDC until November 22, 2018, before he was transferred out of the EDC to the Essex County Correctional Facility. All the claims in this complaint arise out of the time period when Mr. Ojo was detained in the EDC.

9 Defendant CORECIVIC, Inc. (a.k.a. Corrections Corporation of America ("CCA") (hereinafter "CoreCivic"), is a for-profit corporation under the law of the United States that operates private prisons across the country with its contact address at CoreCivic, Inc., 5501 Virginia Way, Suite 110, Brentwood, TN 37027. At all times relevant, Defendant CoreCivic was involved, contributed to, and shown deliberate indifference to the incidents that formed the basis of this complaint including but not limited to the unlawful detention and other tort actions, as explained hereinafter, that caused Plaintiffs' damages. It is liable for its policies that were carried out by its employees.

10 Defendant ORLANDO RODRIGUEZ (hereinafter "Rodriguez") was, and still is, the Warden of Elizabeth Detention Center with his contact address at Elizabeth Detention Center, 625 Evans Street, Elizabeth, New Jersey 07201. At all times relevant, Defendant Warden Rodriguez was employed by the DHS/ICE to perform duties as deportation officer in the DHS/ICE New Jersey Field Office. At all times relevant, he was acting in such capacity and hence, was aware but shown deliberate indifference to the incidents that formed the basis of this complaint including but not limited to the unlawful detention and other tort actions, as explained hereinafter, that caused Plaintiffs' damages. He is sued individually and in his official capacity.

11 Defendant WISE (hereinafter "Wise") was, and still is, the Assistant Warden of Elizabeth Detention Center with his contact address at Elizabeth Detention Center, 625 Evans Street, Elizabeth, New Jersey 07201. At all times relevant, Defendant Wise was employed by the DHS/ICE to perform duties as deportation officer in the DHS/ICE New Jersey Field Office. At all times relevant, he was acting in such capacity and hence, was aware but shown deliberate indifference to the incidents that formed the basis of this complaint including but not limited to the unlawful detention and other tort actions, as explained hereinafter, that caused Plaintiffs' damages. He is sued individually and in his official capacity.

12 Defendant MURRAY (hereinafter "Murray") was, and still is, the employee of Defendant CoreCivic and occupied a position of Captain in the Elizabeth Detention Center with his contact address at Elizabeth Detention Center, 625 Evans Street, Elizabeth, New Jersey 07201. At all times relevant, Defendant Murray was involved, contributed to, and shown deliberate indifference to the incidents that formed the basis of this complaint including but not limited to the unlawful detention and other tort actions, as explained hereinafter, that caused Plaintiffs' damages. He is sued individually and in official capacity.

Defendant SANDRA TUTLER (hereinafter "Tutler") was, and still is, the employee of Defendant CoreCivic and occupied a position of Captain in the Elizabeth Detention Center with her contact address at Elizabeth Detention Center, 625 Evans Street, Elizabeth, New Jersey 07201. At all times relevant, Defendant Tutler was involved, contributed to, and shown deliberate indifference to the incidents that formed the basis of this complaint including but not limited to the unlawful detention and other tort actions, as explained hereinafter, that caused Plaintiffs' damages. She is sued individually and in official capacity.

Defendant CREAMER (hereinafter "Creamer") was, and still is, the employee of Defendant CoreCivic and occupied a position of Lieutenant in the Elizabeth Detention Center with his contact address at Elizabeth Detention Center, 625 Evans Street, Elizabeth, New Jersey 07201. At all times relevant, Defendant Creamer was involved, contributed to, and shown deliberate indifference to the incidents that formed the basis of this complaint including but not limited to the unlawful detention and other tort actions, as explained hereinafter, that caused Plaintiffs' damages. He is sued individually and in official capacity.

Defendant O'NEILL (hereinafter "O'NEILL") was, and still is, the employee of Defendant CoreCivic and occupied a position of Lieutenant in the Elizabeth Detention Center with his contact address at Elizabeth Detention Center, 625 Evans Street, Elizabeth, New Jersey 07201. At all times relevant, Defendant O'NEILL was involved, contributed to, and shown deliberate indifference to the incidents that formed the basis of this complaint including but not limited to the unlawful detention and other tort actions, as explained hereinafter, that caused Plaintiffs' damages. He is sued individually and in official capacity.

Defendant MOMEL RODRIGUEZ (hereinafter "Rodriguez II") was, and still is, the employee of Defendant CoreCivic and occupied a position of Lieutenant in the Elizabeth Detention Center with his contact address at Elizabeth Detention Center, 625 Evans Street, Elizabeth, New Jersey 07201. At all times relevant, Defendant Rodriguez II was involved, contributed to, and shown deliberate indifference to the incidents that formed the basis of this complaint including but not limited to the unlawful detention and other tort actions, as explained hereinafter, that caused Plaintiffs' damages. He is sued individually and in official capacity.

Defendant BEASLEY (hereinafter "Beasley") was, and still is, the employee of Defendant CoreCivic and occupied a position of Detention Officer in the Elizabeth Detention Center with her contact address at Elizabeth Detention Center, 625 Evans Street, Elizabeth, New Jersey 07201. At all times relevant, Defendant Beasley was involved, contributed to, and shown deliberate indifference to the incidents that formed the basis of this complaint including but not limited to the unlawful detention and other tort actions, as explained hereinafter, that caused Plaintiffs' damages. She is sued individually and in official capacity.

18  Defendant VERA (hereinafter "Vera") was, and still is, the employee of Defendant CoreCivic and occupied a position of Detention Officer in the Elizabeth Detention Center with her contact address at Elizabeth Detention Center, 625 Evans Street, Elizabeth, New Jersey 07201. At all times relevant, Defendant Vera was involved, contributed to, and shown deliberate indifference to the incidents that formed the basis of this complaint including but not limited to the unlawful detention and other tort actions, as explained hereinafter, that caused Plaintiffs' damages. He is sued individually and in official capacity.

19  Defendant SMITH (hereinafter "Smith") was, and still is, the employee of Defendant CoreCivic and occupied a position of Detention Officer in the Elizabeth Detention Center with her contact address at Elizabeth Detention Center, 625 Evans Street, Elizabeth, New Jersey 07201. At all times relevant, Defendant Smith was involved, contributed to, and shown deliberate indifference to the incidents that formed the basis of this complaint including but not limited to the unlawful detention and other tort actions, as explained hereinafter, that caused Plaintiffs' damages. She is sued individually and in official capacity.

20  Defendant ERIKA GONZALEZ (hereinafter "Gonzalez") was, and still is, the employee of Defendant CoreCivic and occupied a position of Detention Officer in the Elizabeth Detention Center with his contact address at Elizabeth Detention Center, 625 Evans Street, Elizabeth, New Jersey 07201. At all times relevant, Defendant Gonzalez was involved, contributed to, and shown deliberate indifference to the incidents that formed the basis of this complaint including but not limited to the unlawful detention and other tort actions, as explained hereinafter, that caused Plaintiffs' damages. She is sued individually and in official capacity.

21  Defendant CIVIL (hereinafter "Civil") was, and still is, the employee of Defendant CoreCivic and occupied a position of Detention Officer in the Elizabeth Detention Center with his contact address at Elizabeth Detention Center, 625 Evans Street, Elizabeth, New Jersey 07201. At all times relevant, Defendant Civil was involved, contributed to, and shown deliberate indifference to the incidents that formed the basis of this complaint including but not limited to the unlawful detention and other tort actions, as explained hereinafter, that caused Plaintiffs' damages. He is sued individually and in official capacity.

22  Defendant CORECIVIC DOE #1-10 (hereinafter "CoreCivic #1-10") were, and still are, the employees of Defendant CoreCivic and Detention Officers in the Elizabeth Detention Center with their contact address at Elizabeth Detention Center, 625 Evans Street, Elizabeth, New Jersey 07201. At all times relevant, Defendants CoreCivic #1-10 were involved, contributed to, and shown deliberate indifference to the incidents that formed the basis of this complaint including but not limited to the unlawful detention and other tort actions, as explained hereinafter, that caused Plaintiffs' damages. They are sued individually and in official capacity.

## FACTUAL ALLEGATION

23 On April 12, 2018, the DHS detained Mr. Ojo in Elizabeth Detention Center, 625 Evans Street, Elizabeth, New Jersey.

24 While in EDC, Mr. Ojo complained through the EDC's grievance system, verbal complaint, and/or letters to Defendants CoreCivic. Particularly, Mr. Ojo alleged that his arrest and detention were unlawful and/or unjustified, and requested intervention to the extent that they would cease and desist from furthering his unlawful detention or cause his release from the detention.

25 At all times relevant between April 12, 2018, and November 20, 2018, Defendants Corecivic, Rodriguez, Wise, Murray, Tutler, Creamer, O'Neill, Momel, Beasley, Vera, Ladina, Gonzale, Civil, and Corecivic Doe #1-10 were all aware that Mr. Ojo's bond was unlawfully and improperly revoked (in violations of the 2015 Joint Stipulation and certainly in violation of the Matter of Sugay) and that hence, his detention in EDC was unlawful but all failed or refused to intervene or remedy the situation despite the fact that they are in position to intervene.

26 At all times relevant between April 12, 2018, and November 20, 2018, Defendants CoreCivic acted individually and/or in concert with themselves and others including their servants, contractors, and/or employees such as but not limited to Defendants Tutler, Murray, Rodriguez II, Creamer, O' Neill, Gonzalez, Civil, Beasley, Vera, and Smith with intent to discriminate and intimidate Mr. Ojo, and hence, suppress his expressions against his unlawful detention.

27 At all times relevant between April 12, 2018, and November 20, 2018, Defendants CoreCivic, Tutler, Murray, Rodriguez II, Creamer, O'Neill, Gonzalez, Civil, Beasley, Vera, Smith, and EDC 1-10 acted individually and in concert, discriminated and intimidated Mr. Ojo, and suppressed his expressions against his unlawful detention while he was in custody at EDC.

28 At all times relevant between April 12, 2018, and November 20, 2018, Defendants CoreCivic, Tutler, Murray, Rodriguez II, Creamer, O'Neill, Gonzalez, Civil, Beasley, Vera, Smith, and EDC 1-10 acted individually and in concert, devised scheme including but not limited to frustrate and/or hamper Plaintiffs' access to court and his judicial process.

29 In furtherance of the scheme, at all times relevant between April 12, 2018, and November 20, 2018, Defendants CoreCivic, Tutler, Murray, Rodriguez II, Creamer, O'Neill, Gonzalez, Civil, Beasley, Vera, Smith, and EDC 1-10 acted individually and in concert, discriminated against Mr. Ojo and denied him adequate access to law library; limited to just two pages of legal works copy per day; subjected his legal works to excessive search (shake down) and

unauthorized reading; and subjected him to various forms of disciplinary based on the false and fabricated charges.

30 On or about 04/17/2018-04/23/2018, 06/12//2018, and 10/12/2018, Defendants Beasley and E. Gonzalez, acted, individually and in concert, and denied Mr. Ojo access to the law library and legal material.

31 On or about 05/25/2018-05/29/2018, Defendants Rodriguez, Tutler, Rodriguez II, Beasley, and Gonzalez acted, individually and in concert, and denied Mr. Ojo access to the law library and court.

32 On or about 07/25/2018-09/23/2018, Defendants Simao and Burke acted, individually and in concert, and sanctioned the Healthcare Department's denial of access to serious dental care to Mr. Ojo.

33 On or about 08/01/2018, Defendants Tutler, Gonzalez, and Civil acted, individually and in concert, discriminating against Mr. Ojo, singled him out and subjected him to repeated searching and destruction of his properties including legal works.

34 On or about 08/01/2018-08/06/2018, several detention officers that are currently known by Defendants CoreCivic, Tutler, Murray, Rodriguez II, Creamer, O' Neill, and Gonzalez acted, individually and in concert, and denied Mr. Ojo the supply of hygiene products and insisting that the facility had ran out of hygiene products.

35 On or about 08/06/2018, Defendant Tutler acted in retaliation to Mr. Ojo's grievances as a result of denial of hygiene items to him and cited him based on false and fabricated incident report under code 307 alleging, falsely, that Mr. Ojo refused to obey her order. The incident report was later dismissed after Mr. Ojo had mounted a serious defense.

36 On or about 10/12/2018, Defendant Smith denied Mr. Ojo access to serious medical care by preventing him from going to the infirmary for treatment on his severe headache (10/10), sneezing, coughing and dizziness. Subsequently, when the Mr. Ojo's sickness became aggravated to the extent that he could not climb stair to his assigned bed, Defendants Murray, O' Neill, and Creamer directed two detainees to lay their hands on Mr. Ojo and shove up the stairs to his assigned bed, which they did. In addition, Defendants Murray, O' Neill, Creamer, and Pettis acted, individually and in concert, and devised a plan to fabricate charges against Mr. Ojo to cover-up the fact that he was denied access to serious medical care. After several hours of pain and suffering as a result of the sickness as described hereinabove, Detention Officer Dolphin made arrangements that allowed Mr. Ojo to be medically diagnosed and treated for serious medical issues including providing him with medications including but not limited to antibiotics. However, Defendants Pettis, Murray, and Smith went ahead and fabricated disciplinary charges against Mr. Ojo that includes 314, interfering with the count,

and section 399, conduct which disrupts the orderly operations of the facility, falsely alleging that Mr. Ojo disrupted the count.

37 On or about 10/16/2018, as a result of the fabricated charges, a panel consisting of Defendants Tutler, Beasley and one other individual was set-up to conduct disciplinary hearing on the incident report. The disciplinary hearing was conducted under a bias and hostile atmosphere; and it was apparent that the result of the hearing, sanctioning Mr. Ojo for three days segregation (hereinafter known as "Disciplinary Sanctioning #1"), had been prejudged, even, before the hearing.

38 On or about 10/16/ 2018, Mr. Ojo promptly appealed the decision pertaining to Disciplinary Sanctioning #1 to Defendants Rodriguez, Burke, and Simao citing various grounds of denial of due process including but not limited to denial of right to call witnesses and bias panel. However, Defendants Rodriguez, Burke, and Simao willfully failed to intervene or remedy the situation but, instead, sanctioned the wrongful and unjust charges and punishment respectively.

39 On or about 11/19/2018, Defendant Vera (whose race is Spanish) was exhibiting conducts and making statements that appeared to be racially biased against non-Spanish detainees in the dorm (Unit B) where Mr. Ojo was housed. Particularly, Defendant Vera would handover the TV remote to the detainees that are Spanish race to change the TV channels at will but would insist that detainees that are Black by race should never touch the remote. Specifically, whenever detainees that are Black by race asked her to change the channel on one of the two TVs in the dorm for them, she would first asked the Spanish detainees for permission despite the fact that they were all watching Spanish programs on the other TV but when the Spanish detainee asked for change of the TV channel, she would not ask any the Black detainees but handover the remote to the Spanish detainee so that he can change the channel by himself.

40 Moreover, Defendant Vera started targeting Mr. Ojo and told him that he should not touch TV because he is not Spanish. Mr. Ojo promptly asked that he would like to report her racially biased statements and conducts to a supervisor but she refused to invite the supervisor. However, Defendant O'Neill (a supervisor) and one other officer were passing-by, saw Mr. Ojo with a grievance sheet and talking to Defendant Vera that he would grieve the matter. Defendant O'Neill then entered the unit and asked that Mr. Ojo explain his grievance to him. After explaining to him what Defendant Vera did as explained hereinabove, Defendant O'Neill insisted that Defendant Vera can behave or make any statement as she wants. Mr. Ojo then insisted that he would still grieve the matter through the grievance system. As a result, Defendant O'Neill was upset and insisted that Mr. Ojo should follow him to the "medical" in the facility's infirmary, which Mr. Ojo complied. At infirmary, Defendant O'Neill first fabricated an allegation that Mr. Ojo was exhibiting anger. Mr. Ojo was attended to by a psychologist, who after speaking with Mr. Ojo understood that there was no such uncontrolled anger as falsely alleged by Defendant O'Neill and hence, cleared Mr. Ojo to go

back to the unit. However, when the psychologist informed the officer in the infirmary that he can let Mr. Ojo go back to the unit, the officer insisted that he had been notified that Mr. Ojo would go to the disciplinary segregation. While Mr. Ojo was asking for the reason why he should be disciplined for insisting that he would grieve racial discrimination, Defendants Rodriguez, Wise, Simao, Burke, Grey, and Murray together with other officers instructed approximately six officers to use force on Mr. Ojo.

41 As a result, six officers charged at and mobbed Mr. Ojo; slammed him on the ground and placed him on neck-hold by using knee to press his neck and head on a concrete floor for several minutes, several others officers stood on top of him and caused him serious injuries to his body including but not limited to headache, head bruise, neck pain, body pains, and shortness of breath. This assault and battery eventually caused Mr. Ojo to suffer emotional trauma such as but not limited to post-traumatic stress disorder ("PTSD").

42 At all times material to the incidents that happened on 11/19/2018, Mr. Ojo was not provided with any form of treatment. However, Mr. Ojo was forcibly extracted and locked in the SHU without food for approximately over two days. Moreover, in an attempt to cover up the wrongful incidents (including but not limited to Defendant Vera's racial discrimination, the assault and battery on Mr. Ojo) that happened on 11/19/2018, a charge was fabricated against Mr. Ojo that falsely alleged that Mr. Ojo was yelling at Defendant Vera (when he was saying that he would file grievance) and that Mr. Ojo obstructed the smooth running of the facility.

43 On or about November 22, 2018, a disciplinary hearing was conducted under hostile and biased environment before the same Defendant Beasley and two other officers. At all times relevant to the hearing, Mr. Ojo requested that Defendant Beasley and other officers that investigated the incident should recuse themselves from deciding the matter but they refused. However, the hearing was not fully and fairly concluded before the DHS/ICE transferred Mr. Ojo out of the EDC to the Essex County Correctional Facility ("ECCF") on the same day while Mr. Ojo was still waiting for the outcome of the hearing. At all times relevant, Mr. Ojo was unfairly charged and unjustly disciplined (hereinafter known as "Disciplinary Sanction #2"). Particularly, Mr. Ojo was placed in the disciplinary segregation for approximately over two days, subjected to hearing based on fabricated charges, and denied full and fair opportunity to defend the charges against him.

44 At all relevant times, Defendants CoreCivic, Tutler, Murray, Rodriguez II, Creamer, O' Neill, and Gonzalez were all serving as supervisory officers over the involved officers in the alleged incidents as explained hereinabove and should have intervened having being notified or made to be aware of the discrimination conducts against Mr. Ojo but failed or refused to intervene or remedy the situation.

45 By virtue of the foregoing, the Defendants, including but not limited to Defendants Corecivic, Rodriguez, Wise, Murray, Tutler, Creamer, O'Neill, Momel, Beasley, Vera,

Ladina, Gonzale, Civil, and Corecivic Doe #1-10, acting under color of state law, deprived Mr. Ojo of equal protection under the law.

46  By virtue of the foregoing, the Defendants, including but not limited to Defendants Corecivic, Rodriguez, Wise, Murray, Tutler, Creamer, O'Neill, Momel, Beasley, Vera, Ladina, Gonzale, Civil, and Corecivic Doe #1-10, created a policy or custom under which unconstitutional and unlawful practices occurred, and are knowingly allowing such policies and practices to continue, despite knowing that it causes, and will continue to cause, imminent danger to Mr. Ojo and others that are similarly situated.

47  By virtue of the foregoing, Mr. Ojo suffered violation of his rights pursuant to the First, Fourth, and Fourteenth Amendments to the United States Constitution to be free from an unreasonable search and seizure of their person.

48  By virtue of the foregoing, Mr. Ojo suffered violation of his right to Due Process of Law under the Fourteenth Amendments to the United States Constitution.

49  By virtue of the foregoing, the Defendants, including but not limited to Defendants Corecivic, Rodriguez, Wise, Murray, Tutler, Creamer, O'Neill, Momel, Beasley, Vera, Ladina, Gonzale, Civil, and Corecivic Doe #1-10, committed the tort of intentional infliction of emotional distress when they deliberately acted in an extreme and outrageous manner causing Mr. Ojo to suffer severe emotional distress.

50  By virtue of the foregoing, the Defendants Corecivic, Rodriguez, Wise, Murray, Tutler, Creamer, O'Neill, Momel, Beasley, Vera, Ladina, Gonzale, Civil, and Corecivic Doe #1-10 committed tort of false arrest and imprisonment, unlawful confinement, assault and battery, malicious prosecution, abuse of process, conversion, loss of consortium, prima facie tort, conspiracy tort, negligence, and gross negligence, negligent training, negligent hiring, negligent supervision, negligent retention, invasion of privacy, racial discrimination, denial of due process, unjust punishment, unusual and excessive punishment, infliction of emotional distress, under the laws of the State New Jersey.

## LEGAL CLAIMS

### Federal Causes of Action (42 U.S.C. § 1983)

51  Plaintiff hereby incorporates the preceding allegations as if fully rewritten herein.

52  Defendants Corecivic, Rodriguez, Wise, Murray, Tutler, Creamer, O'Neill, Momel, Beasley, Vera, Ladina, Gonzale, Civil, and Corecivic Doe #1-10 are "persons" within the definition of the Federal Civil Rights Act at 42 U.S.C. § 1983 and required to act pursuant to the requirements expressed therein.

53 Defendants, at all relevant times, included Elizabeth Detention Center and its employees and agents. Defendants Corecivic, Rodriguez, Wise, Murray, Tutler, Creamer, O'Neill, Momel, Beasley, Vera, Ladina, Gonzale, Civil, and Corecivic Doe #1-10 were, at all relevant times, acting under color of law.

54 Defendants Corecivic, Rodriguez, Wise, Murray, Tutler, Creamer, O'Neill, Momel, Beasley, Vera, Ladina, Gonzale, Civil, and Corecivic Doe #1-10 implemented an unconstitutional policy and custom to jail offenders incapable of or unable to pay their fines.

55 This policy was established by the county and/or officials appointed by the municipality and delegated with express authority to make, adopt and enforce policies, rules, orders and regulations.

56 These defendants' inadequate training and supervision, and custom, policy and practice of inaction were deliberately indifferent and directly and proximately deprived Mr. Ojo of his fundamental rights under the Eighth and Fourteenth Amendments of the United States Constitution as actionable under 42 U.S.C. § 1983.

57 The hereinabove described actions and omissions, engaged in under color of state authority by the Defendants, including but not limited to Defendants Corecivic, Rodriguez, Wise, Murray, Tutler, Creamer, O'Neill, Momel, Beasley, Vera, Ladina, Gonzale, Civil, and Corecivic Doe #1-10, are sued individually as a person under 42 U.S.C. § 1983 because of their authorization, condonation, and ratification thereof for the acts of their agents, deprived the Plaintiff of rights secured to him by the Constitution of the United States, including, but not limited to First Amendment right to freedom of expression and right to association, Fourth Amendment right to be free from unlawful seizure of person and property, Fifth and Fourteenth Amendment rights to due process of law, the right to be free from unjustified and excessive force utilized by law enforcement officers, Eighth Amendment right to be free from cruel and unusual punishment, and right to privacy as guaranteed by the Ninth Amendment.

## Pendent State Law Claims

58 Plaintiff hereby incorporates the preceding allegations as if fully rewritten herein.

59 By virtue of the foregoing, the Defendants Corecivic, Rodriguez, Wise, Murray, Tutler, Creamer, O'Neill, Momel, Beasley, Vera, Ladina, Gonzale, Civil, and Corecivic Doe #1-10 committed tort of false arrest and imprisonment, unlawful confinement, assault and battery, malicious prosecution, abuse of process, conversion, loss of consortium, prima facie tort, conspiracy tort, negligence, and gross negligence, negligent training, negligent hiring, negligent supervision, negligent retention, invasion of privacy, racial discrimination, denial

of due process, unjust punishment, unusual and excessive punishment, infliction of emotional distress, under the laws of the State New Jersey, causing Mr. Ojo to suffer severe emotional distress.

## Doe Claims

60 Plaintiff hereby incorporates the preceding allegations as if fully rewritten herein.

61 Defendants Corecivic Doe #1-10 are unknown defendants who engaged in some or all of the conduct alleged in this civil complaint.

62 Each numbered allegation in this civil complaint is to be read as alleging, and does allege, the conduct described against Corecivic Doe #1-10.

63 In each numbered allegation alleging conduct at a specific named defendant, those named defendants not specified in such allegations are named in such allegations as Corecivic Doe #1-10.

## JURY DEMAND

64 Mr. Ojo demands a trial by jury in this action on each of his claims triable by jury.

## PRAYER FOR RELIEF

By virtue of the foregoing, Plaintiff Mr. Ojo requests that the Court grant the following reliefs:

1. Assume jurisdiction over this matter;

2. Issue judgment against each and every listed Defendants including but not limited to Defendants Corecivic, Rodriguez, Wise, Murray, Tutler, Creamer, O'Neill, Momel, Beasley, Vera, Ladina, Gonzale, Civil, and Corecivic Doe #1-10, on each and every allegations as set forth in this complaint;

3. Declare that Mr. Ojo's constitutional and state law rights were violated by the defendants;

4. Enter judgment holding Defendants Corecivic, Rodriguez, Wise, Murray, Tutler, Creamer, O'Neill, Momel, Beasley, Vera, Ladina, Gonzale, Civil, and Corecivic Doe #1-10, jointly and severally liable for the violation of Mr. Ojo's rights pursuant to the First, Fourth, and Fourteenth Amendments to the United States Constitution to be free from an unreasonable search and seizure of their person;

12

5. Enter a judgment holding Defendants Corecivic, Rodriguez, Wise, Murray, Tutler, Creamer, O'Neill, Momel, Beasley, Vera, Ladina, Gonzale, Civil, and Corecivic Doe #1-10, jointly and severally liable to Mr. Ojo for the wrongs complained of;

6. Awarding Mr. Ojo compensatory damages in excess of $5,000,000.00 and/or in an amount to be determined at trial;

7. Awarding Mr. Ojo punitive damages against the individual Defendants Corecivic, Rodriguez, Wise, Murray, Tutler, Creamer, O'Neill, Momel, Beasley, Vera, Ladina, Gonzale, Civil, and Corecivic Doe #1-10, in an amount to be determined at trial;

8. Award Mr. Ojo his costs, interest from the date of filing, and reasonable attorneys' fees as provided for by law; and

9. Grant such other, further, and different relief as this Court deems just and proper.


I swear under the penalty of perjury that the foregoing is true to the best of Mr. Ojo's ability and knowledge.


Dated: May 14, 2021.


Respectfully,

Olukayode David Ojo
144 Elm Street, Apt. 1
Orange, NJ 07050.